IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:

Donald Lee York
and
Peggy Ann York,    (Chapter 13)

Debtors.    Case No. 09-11577

---

MEMORANDUM DECISION

---

The Yorks' uncontested chapter 13 Statement of Current Monthly and Disposable Income shows that they are above-median income debtors who have no projected disposable income. The Yorks' Schedules I and J list monthly income of $4,580.90 and expenses of $3,016.92. Their plan proposes 60 monthly payments of $750.01, resulting in an approximately 52% dividend to unsecured creditors.

The chapter 13 trustee objected to confirmation of the debtors' plan as, in the vernacular of chapter 13, not representing the debtors' "best efforts." After a preliminary confirmation hearing on May 20, 2009, the parties submitted briefs in support of their positions. The trustee argues that the entire difference between monthly income and expenses listed on Schedules I and J should be applied to plan payments to complete the plan more quickly. Recognizing that his view is not supported by local decisions, the trustee seeks in the alternative to compel modification of the plan under § 1329, if the present plan is confirmed.

I.

The subjective "best efforts" test that applied to cases filed prior to October 2005 was supplanted by the rigorous requirements of BAPCPA.[1] Now, if the trustee objects to confirmation, the court "may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors." 11 U.S.C. § 1325(b)(1) (2009). The term "disposable income" means "current monthly income . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor." Id. § 1325(b)(2). Section 101(10A) defines "current monthly income" as

> the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on—
>
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521 (a)(1)(B)(ii); or
>
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521 (a)(1)(B)(ii).

Section 707(b)(2) controls the determination of "amounts reasonably necessary to be expended" for above-median debtors. See id. § 1325(b)(3). The applicable commitment period "shall be . . . not less than 5 years" for above-median debtors. Id. § 1325(b)(4)(A). The period "may be less than 3 or 5 years, whichever is applicable . . . but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." Id. § 1325(b)(4)(B).

The district court for this district held that "projected disposable income" means "properly calculated current monthly income projected forward for each month during the plan commitment period. As a result, even a plan that paid nothing to unsecured creditors would satisfy § 1325(b)." In re Mancl, 381 B.R. 537, 541 (W.D. Wis. 2008). As noted by another

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

2

court, "the Schedule J calculation of Monthly Net Income has no direct role to play in the confirmation process for an above-median debtor, whose disposable income is determined by the means test." In re Smith, No. 07-82462, 2009 WL 937144, at *3 (Bankr. C.D. Ill. Mar. 24, 2009). Similarly, the good faith requirement of § 1325(a)(3) cannot be used to reject a plan solely because it proposes no payments to unsecured creditors despite the fact that "the debtors' actual disposable income would permit such payments." Mancl, 381 B.R. at 542.

In this case, the Yorks are required to commit nothing to their unsecured creditors because the means test indicates that they have no disposable income. The length of the plan, however, must be 5 years because the Yorks are above-median debtors. The plan may only be shortened if it provides for 100% payment to unsecured creditors. The trustee's objection appears to advocate a 52% payment to unsecured creditors in less than five years (or, possibly, monthly payments of $1,563.98 until unsecured claims are paid 100%). The Code does not permit the former (or compel the latter). Accordingly, the trustee's objection to confirmation must be overruled.

## II.

Upon confirmation the trustee seeks modification. The Bankruptcy Code permits the court to modify a chapter 13 plan after confirmation "upon request of the debtor, trustee, or the holder of an allowed unsecured claim to— (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1). But any modification is specifically subject to some confirmation standards, to wit: "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." Id. § 1329(b)(1). Section 1325(a) provides that "[e]xcept as provided in subsection (b), the court shall confirm a plan if— (1) the plan

complies with the provisions of this chapter and with the other applicable provisions of this title." The proponent of plan modification "bears the burden of satisfying the standards for confirming the plan modification." In re Wetzel, 381 B.R. 247, 254 (Bankr. E.D. Wis. 2008).

As explained above, this district adheres to a straight forward approach to the disposable income analysis and holds that "projected disposable income" means "properly calculated current monthly income projected forward for each month during the plan commitment period." Mancl, 381 B.R. at 541. In Mancl, the court emphasized that the "clear meaning and intent of § 1325(b) is to establish objective and defined methods for calculating both income and expenses." Id. at 542. However, as noted by another court, the "adoption of the strict, mechanical approach may lead to impractical results when a debtor's 'disposable income' calculated on Form B22C does not accurately reflect the debtor's actual income." In re Nance, 371 B.R. 358, 367 (Bankr. S.D. Ill. 2007).

The problems can arise as overstated disposable income requiring payments the debtor has no ability to make. Or, as in this case, the understatement of disposable income may permit payments so low as to require little sacrifice by the debtor. Judicial rules designed to improve one situation may only exacerbate the problem in the other. So, some courts have suggested that the discrepancy be remedied by way of a post-confirmation modification. See In re Burmeister, 378 B.R. 227, 232 (Bankr. N.D. Ill. 2007) ("If, following confirmation, the trustee believes the Burmeisters' plan should be modified to increase their plan payments because they have stopped paying the Vernon Hills mortgage and have surrendered the property, he can file the necessary motion under section 1329(a)."). In Burmeister, the court confirmed the debtors' chapter 13 plan despite the trustee's objection. See id. The trustee argued that the debtors' disposable income was incorrectly calculated because the debtors planned to surrender certain property but included

the mortgage payments for that property in their calculation of projected disposable income. See id. at 229. The court noted that §§ 1325(b)(3) and 707(b)(2)(A)(iii)(I) require that the disposable income calculation be made utilizing the means test, which correctly included the mortgage. See id. at 231. The court explained that "[a] motion to modify a confirmed plan, rather than an objection to the plan's confirmation, is the way to counter the peculiar effects of the disposable income calculation for above-median debtors." Id. at 231-32

At least one court has criticized this portion of the Burmeister decision directly. See, e.g., In re Kalata, No. 07-21710, 2008 WL 552856 (Bankr. E.D. Wis. Feb. 27, 2008). In Kalata, after sustaining the trustee's objection to confirmation based on funds available in excess of the means test computation of disposable income, the court noted that although the Burmeister court was correct in explaining that the trustee could move to modify the plan after confirmation, this was an "unnecessary step" and the U.S. Supreme Court has "indicated a disinclination to require vain procedural exercises." Id. (citing Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007)). Endorsing the Kalata analysis, the court in In re Van Bodegom Smith, 383 B.R. 441, 455 n.6 (Bankr. E.D. Wis. 2008) stated:

> it does seem unlikely that Congress intended to allow debtors to subtract from their projected disposable income calculations secured debt payments that they would not be making, only to force the trustee to file a § 1329(b) motion to modify the plan moments later, then have the court grant that motion and order the debtors to modify the plan they filed moments ago.)

The Kalata decision rests in part on that court's opinion that the means test may be treated as a mere presumption. See In re Hilton, 395 B.R. 433, 442 (Bankr. E.D. Wis. 2008) (stating that, of differing approaches to calculating projected disposable income, treating the means test as a presumption is the method that is "the least flawed"). But cf. In re Guzman, 345 B.R. 640, 646 (Bankr. E.D. Wis. 2006) ("The court must decide the 'amounts reasonably

5

necessary to be expended' for above-median debtors based solely on § 707(b)(2)(A) and (B), i.e., Form B22C, not on excess income over expenses from Schedule J.").

The plain language of § 1329(a) does not permit modification of a chapter 13 plan *before* confirmation. Nor under Mancl may this Court treat the means test as a presumption. To do so under the guise of a pre-confirmation modification motion, the Court would be shifting the burden assigned to a party seeking modification to the debtor.

However, post-confirmation, the path to modifying a chapter 13 plan is quite broad. Some courts require a change in the debtor's circumstances in order to modify, but the Seventh Circuit does not. See In re Witkowski, 16 F.3d 739, 746 (7th Cir. 1994) ("[T]he clear and unambiguous language of § 1329 negates any threshold change in circumstances requirement and clearly demonstrates that the doctrine of res judicata does not apply."). The court elaborated: "[t]his is not to say that in determining whether to modify a bankruptcy plan, the bankruptcy court may not consider whether a change in circumstances occurred; but, § 1329 and the doctrine of res judicata do not require a minimal showing of a change in circumstances," id., and noted that "[a] further limit to meaningless motions comes under Section 1325(a)(3), which requires that the plan be proposed in good faith. For example, lack of good faith can be shown by manipulation of code provisions." Id.

A number of courts have held that § 1325(b) does not apply to modification of a plan. See, e.g., In re Young, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007) ("The plain meaning of the statute supports the conclusion that modification is not subject to the disposable income test."). Other courts hold that the provisions of § 1329 "require the plan be proposed . . . in accord with the ability to pay test, 11 U.S.C. § 1325(b)." In re Solis, 172 B.R. 530, 532 (Bankr. S.D. N.Y. 1994); see also In re Braune, 385 B.R. 167, 171 (Bankr. N.D. Tex. 2008) ("In the context of

modification, the disposable income test applies only when either the trustee or an unsecured creditor objects to the modification pursuant to Code § 1325(b)(1).").

The splintered holdings regarding application of § 1325(b) to modification motions demonstrate that the language and structure of the Bankruptcy Code do not provide much guidance. First, § 1329(b)(1) clearly sets forth specific sections of chapter 13 that apply to a motion for modification. Section 1325(b) is notably (and I assume intentionally) omitted. Conversely, § 1325(a)(1), which clearly applies to motions for modification, may incorporate § 1325(b) when it references compliance with "the provisions of chapter 13" as a confirmation requirement. As the Braune court cogently notes, if § 1325(b) applies at all to modification motions, it does not apply equally to *all* modification motions.

The application of § 1325(b) to motions by the trustee would effectively bar *all* modification motions premised on the increased income of an above-median debtor.[2] The term "disposable income" is defined by reference to the term "current monthly income." That term, in turn, is defined as the debtor's income received in the six-month period preceding the filing of the petition. A strict application of § 1325(b) to a modification motion would send the parties back to the argued confirmation status of the debtor and preclude any change in the debtor's income.

But failing to apply § 1325(b) to modification motions creates other unanticipated consequences. Specifically, § 1325(b) is the statutory source for the "best efforts" test. If none of § 1325(b) applies to modifications, does it follow that the Court need not consider whether the debtor has complied with any "best efforts" test?

---

[2] Of course, the trustee could move for modification based on decreased expenses, as illustrated by the cases involving surrender of an asset securing a large debt.

7

It is enough, at least for our purposes, to hold that § 1325(b) does not apply to the trustee's motion for modification in this case. As stated above, even if the Court assumes that § 1325(a)(1) incorporates § 1325(b) (which I do not decide in this case), § 1325(b) cannot be triggered upon the trustee's motion for modification under § 1329.

It appears then, that neither the Bankruptcy Code nor the case law are per se barriers to the trustee's post-confirmation modification motion. But two additional considerations function to doom the motion.

First, the trustee cites no change since confirmation. While a change of circumstances is not a necessary threshold to modification, the absence of any change appears to signal a mere revisiting of the confirmation order. Unlike other cases discussed in this opinion, *nothing* has changed since confirmation. The Yorks have not surrendered any assets that might reduce their secured debt, and there is no evidence that their income has increased since confirmation.

Second, modification motions also must be brought in good faith. And the Seventh Circuit explicitly identified manipulation of Bankruptcy Code provisions as an example of a lack of good faith. Here, using a modification motion as an end run around Mancl's interpretation of § 1325(b) suggests a lack of good faith. The modification motion essentially asks the Court to immediately revisit the conclusions dictated by Mancl by invoking a poorly drafted section of the Bankruptcy Code.

When BAPCPA replaced the old best efforts test with the means test it was clearly intended that subjective analysis by bankruptcy judges was to be replaced by an arbitrary standard. The displaced standard cannot be resurrected by so simple an artifice as modification immediately following confirmation, without something more. How much more is not a question before me today.

8

Accordingly, the trustee's objection to plan confirmation is overruled and the trustee's motion for modification of the confirmed plan is denied.

Dated: July 20, 2009

ROBERT D. MARTIN
UNITED STATES BANKRUPCY JUDGE